AO 93 (Rev. 11/13)  Search and Seizure Warrant (Modified: WAWD2-12-2020)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br><br>Information associated with Two Target Accounts/Identifiers, for Investigation of 21 U.S.C. §§ 841(a)(1) and 846 and Other Offenses | )<br>)<br>)  Case No. MJ20-5250<br>)<br>)<br>) |

```
                          ___ FILED ___ LODGED
                          ___ RECEIVED
                          Oct 30, 2020
                          CLERK U.S. DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON AT TACOMA
                          BY _____ DEPUTY
```

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachments A1 and A2, located in an unknown district, there is now concealed property and evidence described in Attachment B.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒  evidence of a crime;

☒  contraband, fruits of crime, or other items illegally possessed;

☒  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§  841(a)(1) and 846 | Distribution of Controlled Substances, Conspiracy |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits.  Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒  Delayed notice of 90 days (give exact ending date if more than 30 days: 01/28/2021) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
x by reliable electronic means; or ☐ telephonically recorded

*Applicant's signature*

SEAN THORNTON, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
x The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date:  10/30/2020

*Judge's signature*

J. RICHARD CREATURA, U.S. Magistrate Judge
*Printed name and title*

City and state:  Tacoma, Washington

USAO # 2018R001199

1
2

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
A SEARCH WARRANT AND PEN-TRAP ORDER**

3
4
5

STATE OF WASHINGTON )
         ) ss
COUNTY OF PIERCE   )

6
7

I, SEAN THORNTON, being first duly sworn, hereby depose and state as follows:

8

**INTRODUCTION**

9
10
11
12
13
14
15
16
17

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 971-218-1913, with listed subscriber(s) Prepaid Customer, at 17330 Preston Road, Dallas, Texas, 75252 ("Target Cell Phone 6", or **TCP-6**), whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.  **TCP-6** is described herein and in Attachment A1, and the location information to be seized is described herein and in Attachment B.  I believe Alfredo VALDOVINOS-DIAZ is the user of **TCP-6**.

18
19
20
21
22
23
24
25
26

2. Also, I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 661-903-2417, with listed subscriber(s) Prepaid Customer, at 1234 Gophn, Bakersfield, California, 93307 ("Target Cell Phone 9", or **TCP-9**), whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.  **TCP-9** is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B.  I believe Cosme SANCHEZ-ESPINO is the user of **TCP-9**.

27
28

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 1
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

ECPA

3.     The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

4.     Because the warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.     The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.     This application includes all the information required by the Pen Register Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Marci L. Ellsworth that (1) identifies the Federal Bureau of Investigation as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 2
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act.  Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Cell Phones without geographic limit.

9.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that AT&T and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/traps, including installation and operation of the pen-traps unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the Federal Bureau of Investigation, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

10.     **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 3
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

12.     I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since May of 2017.  I am currently assigned to FBI Seattle Division's Vancouver Resident Agency (VRA) in Vancouver, Washington, focusing on the investigation of organized crime, gangs, drug trafficking, and other criminal matters.

13.     Since becoming a Special Agent, I have received specialized training from the FBI, to include completing the 21-week New Agent Training course at the FBI Academy.  I have also received training in investigative methods to trace illegal proceeds and prove financial crimes, money laundering, and conduct asset forfeiture.  I have participated in multiple drug investigations targeting large scale drug trafficking organizations (DTOs) as the case agent or as an investigating agent.  During my tenure as an agent, I have been involved in federal and state wiretap investigations.  I have debriefed defendants and witnesses who had personal knowledge regarding drug trafficking organizations.  Additionally, I have participated in many aspects of drug investigations, including conducting physical surveillance, confidential source management, providing grand jury testimony, preparing search warrant affidavits, executing search warrants, and making arrests.

14.     Based upon my training and experience, I am familiar with drug traffickers' methods of operation, including their methods of distribution, storage, and transportation of drugs, their methods of collecting proceeds of drug trafficking, and their methods of laundering money.  I am also familiar with methods employed by large-scale DTOs to avoid detection by law enforcement, including the use of cellular telephone technology, text messages, counter surveillance, false or fictitious identities, and encoded communications.

15.     The information contained in this affidavit is based upon knowledge I gained from my investigation, my personal observations, my training and experience, and information provided by other law enforcement officers, agents, or analysts. This affidavit is intended to show merely that there is sufficient probable cause for the

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 4
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2

requested warrant and pen-trap, and therefore does not set forth all of my knowledge about this matter.

3
4
5
6
7

16.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Controlled Substances and Conspiracy) have been committed, are being committed, and will continue to be committed by Alfredo VALDOVINOS-DIAZ, Cosme SANCHEZ-ESPINO, and others known and unknown.

8

### SUMMARY OF PROBABLE CAUSE

9
10
11
12
13
14
15
16
17
18
19
20

17.     The United States, including the FBI, is conducting a criminal investigation of Alfredo VALDOVINOS-DIAZ, Cosme SANCHEZ-ESPINO, and others known and unknown, regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846.  FBI agents based in Vancouver, Washington, and members of the Southwest Washington Interagency Gang Enforcement Team (SWIGET), the Clark Vancouver Regional Drug Task Force (CVRDTF), and Vancouver Police Department (VPD) have been investigating a Drug Trafficking Organization (DTO) operating in the Vancouver area. The DTO appears to be headed by Alfredo VALDOVINOS-DIAZ, who is currently incarcerated at Great Plains Federal Correctional Institute (FCI), a federal contract facility in Hinton, Oklahoma, serving a 96-month prison sentence imposed on June 8, 2015, in cause number CR14-05159BHS-004 (Western District of Washington), for Conspiracy to Distribute Methamphetamine.

21
22
23
24
25

18.     Another member of the VALDOVINOS-DIAZ DTO identified in this investigation is Cosme SANCHEZ-ESPINO.  SANCHEZ-ESPINO is also an inmate at Great Plains FCI, serving a 188-month sentence imposed on July 9, 2008, in cause number CR07-29-H-DWM (District of Montana), for Conspiracy to Distribute Methamphetamine

26
27
28

19.     Through search warrants, post-*Miranda* interviews, information provided by sources of information and confidential informants, and telephone toll analysis, investigators have identified around a dozen individuals who have historically been

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 5
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

associated with the VALDOVINOS-DIAZ DTO, and with VALDOVINOS-DIAZ and SANCHEZ-ESPINO.

20.     As set forth below, I believe there is probable cause to believe that VALDOVINOS-DIAZ and SANCHEZ-ESPINO have possessed and used contraband cellular phones to direct drug trafficking activities of their co-conspirators, during their respective periods of incarceration.

### November 17, 2019, Seizure of Methamphetamine from Brittney JONES

21.     On November 17, 2019, CVRDTF Detective Erik Zimmerman learned that a vehicle associated with Brittney JONES was returning to Washington from California. Det. Zimmerman suspected that Brittney JONES, a Vancouver, Washington, resident, was a methamphetamine dealer, and believed it was likely that she was traveling with narcotics concealed in her vehicle.  Investigators obtained the license plate numbers and vehicle descriptions for all of the vehicles registered to her in the Washington Department of Licensing (DOL) database.  Through law enforcement databases, investigators learned that a 2010 Nissan Rogue (bearing Washington license BQC4189) owned by Brittney JONES had been in California on three separate occasions since September 2019.  Based upon my training, knowledge, and experience I am aware that California is the primary source for narcotics in the Vancouver area.

22.     At about 6:50pm on Sunday, November 17, 2019, Medford Area Drug & Gang Enforcement (MADGE) Task Force investigators observed the Nissan traveling northbound on Interstate 5 in the area of Medford, Oregon, through physical surveillance. CVRDTF investigators located the vehicle through the utilization of GPS location data (obtained with authorization in state court), and conducted a traffic stop when the Nissan arrived in Vancouver, Washington.  Brittney JONES, Brent Jones (Brittney JONES' brother), and Brittney JONES' two children were in the car.

23.     Brittney JONES provided consent to CVRDTF Detective Robert Anderson to conduct an exterior K9 sniff of her vehicle.  Detective Anderson deployed his K9, who

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 6
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

gave a positive alert for the odor of narcotics.[1]   Brittney JONES also provided consent to a search of the Nissan.  Detectives found no drugs during the consent search, but saw that the Nissan showed signs it had been altered.  It should be noted that the consent search did not include a thorough search of the vehicle's undercarriage, door panels, dash compartment, or areas within the seats.

24.     Det. Anderson deployed his K9 once again to sniff all of the property removed from the vehicle, and the K9 did not give a positive alert.  Det. Anderson deployed his K9 inside the vehicle, where the K9 did give a positive alert near the dash area.  Detectives noticed that Brittney JONES was using her cellular phone to send messages during the traffic stop and search

25.     Detectives secured the Nissan and towed it to a secure location pending an application for a search warrant to conduct a more thorough search.  On Tuesday, November 19, 2019, Clark County District Judge Chad E. Sleight authorized a search warrant.  Investigators subsequently conducted a more thorough search of the vehicle.

26.     Investigators removed both front seats from the vehicle and located compartments accessible by the removal of a steel plate.  From within both compartments, investigators located a combined total of 57 pounds of methamphetamine. The street value of the seized methamphetamine is roughly $270,000, if sold in one-ounce increments at $300 per ounce, which I know to be a consistent price for the drug in the Vancouver area at the time.

27.     Det. Zimmerman received information from a Confidential Reliable Informant ("CRI-1"[2]) regarding this investigation.  CRI-1 was aware law enforcement

---

[1] Detective Anderson's assigned K9 'Piper' has been a certified narcotics detection K9 since October 16, 2015, being specifically and solely trained to detect the odor of illegal narcotics, specifically methamphetamine, cocaine, and heroin, after completing over 200 hours of training per Washington Administrative Code (WAC) 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. Additional certifications include PNWK9 on May 20, 2016, and re-certifications under Washington Criminal Justice Training Center (CJTC) standards on June 19, 2019, and PNWK9 standards on May 24, 2019.  Current certifications under CJTC standards are valid for 24 months.

[2] I am intentionally being vague to avoid possibly revealing CRI-1's true identity, in hopes of avoiding possible retribution against CRI-1 from DTO members.  CRI-1 has admitted to purchasing, selling, and using

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 7
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

had seized the methamphetamine from Brittney JONES' vehicle, and informed Det. Zimmerman that Brittney JONES was working for another individual.  CRI-1 described this individual as an unknown Hispanic male who utilized a cellular phone (voice and text), and Facebook messenger to communicate.  CRI-1 identified the name on the Facebook account of this unknown Hispanic male as "Jose LOPEZ" (SA-1).  CRI-1 had previously purchased methamphetamine directly from Brittney JONES on multiple occasions; the transactions were facilitated through the Hispanic male

### *Execution of Search Warrants on January 15, 2020*

28.     On January 15, 2020, CVRDTF detectives executed search warrants at 4619 NE 112th Avenue, #K205, Vancouver, Washington (Brittney JONES' apartment), and at 1428 N 3rd Avenue, Kelso, Washington (Brent JONES' primary address). Detectives found no drug evidence within Brent JONES' residence in Kelso.  At Brittney JONES' residence in Vancouver, detectives located approximately 500 pills and what appeared to be a drug ledger.  The Washington State Patrol laboratory has conducted testing on a representative sample of the pills and confirmed they contain Fentanyl.

29.     Prior to the execution of the warrant at her apartment, detectives contacted Brittney JONES at her place of employment and notified her that a search warrant would be executed.  Detectives told Brittney JONES she was welcome to accompany them to the apartment.  Brittney JONES agreed, and engaged in a non-Mirandized interview with Det. Zimmerman.  During that interview, Brittney JONES confirmed her involvement in the ongoing possession and distribution of controlled substances.  Brittney JONES further confirmed that she has traveled to California on multiple occasions to pick up bulk methamphetamine for distribution in the Vancouver area, and would personally access

---

methamphetamine, as well as to being familiar with how drugs are packaged, sold, transported, and consumed. CRI-1 is motivated to assist law enforcement in return for favorable consideration regarding a pending charge of possession of a controlled substance.  CRI-1 has numerous felony convictions, and has provided consistent and substantial assistance to law enforcement.  The crimes CRI-1 has been convicted of do not include crimes of dishonesty or deception.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 8
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the hidden compartments in the Nissan to remove the methamphetamine while the vehicle was parked in her garage.

30.     Brittney JONES was in possession of a cellular phone and provided detectives with the passcode to allow them to manually search the phone.  Detectives observed the Facebook user/account "Jose LOPEZ" (SA-1) as a friend/contact of Brittney JONES' Facebook account.  There was no photograph on SA-1's home page, and SA-1 had a total of 75 friends.  Brittney JONES' association with SA-1 corroborated the information detectives had received from CRI-1.

31.     On January 24, 2020, CVRDTF detectives arrested Brittney JONES for possession of controlled substances with intent to distribute, in reference to the 57-pound methamphetamine seizure in November 2019.  She was booked into the Clark County Jail, and posted bail within a few days.  The matter is pending in Clark County Superior Court, with a trial date set in December 2020.

### Interview of Two Vancouver Residents – February 4, 2020

32.     On or about February 4, 2020, Det. Zimmerman contacted two individuals who volunteered information regarding Brittney JONES' involvement in methamphetamine trafficking.  The individuals were interviewed separately, and both provided information that detectives previously knew to be accurate and considered credible.[3]

33.     Both citizens said Brittney JONES works on behalf of a Hispanic male, organizing transfers of methamphetamine from California to Washington.  This Hispanic male is also involved in organizing the day-to-day transactions of methamphetamine with buyers.  The individuals identified the Hispanic male as "Cosme," and said he was allegedly incarcerated in an Oklahoma federal prison for drug offenses related to a

---

[3] Det. Zimmerman is aware of the true identities of the two individuals.  However, considering the nature of the crime being investigated, specifically the significant quantities of methamphetamine being trafficked (presumably by a Mexican cartel), those providing information to law enforcement are placing themselves in considerable risk of harm.  Thus, I have not included the true identities of these individuals in this affidavit.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 9
USAO # 2018R01199

Montana federal investigation.  The individuals stated that, while incarcerated, "Cosme" is utilizing a contraband cellular phone to communicate via voice and text, as well as via Facebook messenger.  One of the individuals explained how the vehicles utilized have sophisticated secret compartments (or traps) to conceal the methamphetamine.  The second individual said s/he and others would also have drug-related communications with "Cosme" through his Facebook account, which s/he identified as being in the name "Jose LOPEZ" (Subject Account-1 or SA-1).

### Linkage of SA-1 to Cosme SANCHEZ-ESPINO

34.     On or about February 6, 2020, investigators learned of an inmate named Cosme SANCHEZ-ESPINO, incarcerated at Great Plains FCI located in Hinton, OK, for conspiracy to distribute methamphetamine.  The underlying investigation/prosecution took place in Montana.  Investigators obtained SANCHEZ-ESPINO's booking photograph and showed it to one of the two individuals Det. Zimmerman spoke with (described above).  That individual positively identified SANCHEZ-ESPINO as the person s/he had referred to as "Cosme," the user of the "Jose LOPEZ" Facebook account (SA-1).

35.     On March 5, 2020, Clark County Superior Court Judge Scott Collier authorized a search warrant for Facebook records related to SA-1.  Detectives received the records (covering a date range of November 1, 2019, to February 14, 2020) from Facebook on March 11, 2020.  Much of the communication (messages) sent to/from SA-1 was in Spanish.  CVRDTF Detective Rodrigo Osorio, a fluent Spanish speaker, translated the material.  Some examples of those messages (in their translation to English) are set forth below.

- On November 18, 2019, at 7:11am UTC (which corresponds to November 17, 2019, at 11:11pm PST), SA-1 sent a message to "Jorge Espino" (Facebook ID 100004474154636) that read, "They stopped her check on her."  In the next message, SA-1 said, "She is close to the house," and "she is telling me they are drug cops."  At 7:13am UTC (11:13pm PST), Jorge Espino responded and said,

"yes, she is close to home" and "she has been stopped for 9 minutes." SA-1 then asked Jorge Espino if he can hear anything. Jorge Espino said nothing can be heard, and all he can see is that the vehicle is parked in a store parking lot.

- At 7:20am UTC (11:20pm PST), SA-1 said, "she saw my message" and then said, "it's all fucked up." SA-1 said, "she says they are using the dog," and then messages went back and forth between SA-1 and Jorge Espino as SA-1 asked Jorge Espino to keep checking on it..

36. Investigators believe Jorge Espino is Cosme SANCHEZ-ESPINO's brother. Based on the conversation between SA-1 and Jorge Espino, it is apparent they were referring to someone being pulled over, and, further, that Jorge Espino could see where the car was and was able to hear what was going on around the vehicle. As noted above, Brittney JONES was using her cellular phone during the traffic stop and search. Investigators believe Brittney JONES was in communication with SANCHEZ-ESPINO, via SA-1, during the traffic stop and this accounts for SANCHEZ-ESPINO's knowledge of events as they unfolded (e.g., "she is telling me they are drug cops"). Investigators also believe that Jorge Espino was monitoring some sort of GPS device on Brittney JONES' vehicle, which accounts for his knowledge of where the vehicle was located (e.g., "she has been stopped for 9 minutes" and stating the vehicle was in a parking lot). The GPS device also appears to have audio and video capability. Investigators later located a GPS device capable of also recording or relaying interior audio, affixed to the interior of Brittney JONES' Nissan Rogue, hard-wired to the vehicle's power supply.

11. Additional messages in this same string (i.e., corresponding to the November 17, 2019, traffic stop of Brittney JONES) between SA-1 and Jorge Espino include the following:

- At 7:49am UTC (11:49pm PST), SA-1 asked, "how hard is it to open that up?" Jorge Espino replied, "they have to move the chairs" [likely meaning to remove the seats].

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 11
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- At one point, Jorge Espino said the vehicle is moving to the north in "vancuber" [sic] and sent SA-1 a photo depicting a satellite view map. The map showed a vehicle icon (named "Rogue") in the parking lot of the Clark County Sheriff's Office vehicle maintenance yard.

- Jorge Espino later asked if they let the "donkey/mule" go, and if the "donkey/mule" had called SA-1. SA-1 replied and said, "yes, I just hung up with her."

37.     Based on my knowledge of this investigation, as well as on other Facebook messages discussed in this affidavit, I believe SANCHEZ-ESPINO (using SA-1) and his brother, Jorge Espino, were talking about the CVRDTF traffic stop of Brittney JONES on November 17, 2019, and the 57 pounds of methamphetamine in a hidden compartment under the seats ("the chairs") of the Nissan Rogue Brittney JONES was driving.

38.     Additional messages of interest in SA-1 that investigators received through the above-described search warrant included one on December 31, 2019, in which Jorge Espino told SA- 1, "hey it's going to be in that girl's brother's name. The lady told me that it will be ready on Thursday and that on Friday they will do the Smog test and that same day they will provide the plates." It appeared Jorge Espino was referring to a vehicle that would be registered to a female's brother. Based on my knowledge of facts in this investigation, I know that a Ford Edge (bearing California plate 8NPM751) is registered to Brent Jones (Brittney JONES' brother) and believe this is the vehicle Jorge Espino was referring to. California Department of Motor Vehicles records show the vehicle's registration became effective on Friday January 3, 2020, which corresponds with the timeline established in the messages. As described later in this affidavit, CVRDTF detectives would locate 25 pounds of methamphetamine in a hidden compartment in this vehicle

39.     Another message of interest in SA-1 was dated January 15, 2020, at 9:37pm UTC (1:37pm PST). In this message, SA-1 told Jorge Espino, "she is telling me that they are checking the apartment." I believe this was a reference to execution of the CVRDTF

search warrant at Brittney JONES' apartment on January 15, 2020.  At 1:01am UTC on January 18, 2020 (5:01pm PST on January 17, 2020), SA-1 said, "the only thing is that they did find the fucking/bitch candies."  I believe this was a reference to the Fentanyl pills found in Brittney JONES' apartment.

### *Discussion of Methamphetamine Shipment in February 2020*

40.     Included in the materials received from Facebook pursuant to this first search warrant on SA-1 was series of messages between SA-1 and a user named "Shana BeauBeaux" that began on February 5, 2020.  Review of this Facebook profile leads me to believe this is Shana BOBO, based on comparison with a Washington State DOL photograph of BOBO.  It is also my belief, based on my training and experience, that "BeauBeaux" is an alternate spelling for BOBO, to avoid detection of the Facebook account by law enforcement

41.     I reviewed criminal history records for BOBO, and found that she has four felony convictions for drug-related offenses.  The criminal history also shows multiple aliases used when contacted by law enforcement.  These aliases include "Shawna Bobo" and "Shana Kalberer," to name a few.

42.     On February 6, 2020 at 9:50am UTC (1:50am PST), SA-1 told BOBO, "call brittney in the morning."  SA-1 then said, "she well tell you wher to go and get the car in the paper."  I believe SA-1 was telling BOBO to contact Brittney JONES.

43.     SA-1 sent a message to "Rocio Gomez" (who appears from the context of other messages in SA-1 to be SANCHEZ-ESPINO's girlfriend) on February 7, 2020, at 4:36pm UTC (8:36am PST), in which SA-1 told her that "the people that I sent are new they left yesterday at noon and they are still not even to California when they were supposed to almost be there."  I believe SANCHEZ-ESPINO was stating that he sent new drug couriers (i.e., not Brittney JONES and/or her brother, Brent JONES) to California to obtain a load of narcotics for shipment to Washington.  I further believe (for the reasons described below) these new couriers were BOBO and Kyle Gojio.  Additional messages between SA-1 and Jorge Espino discussed someone going "down" (to California),

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 13
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

stopping in Salem (Oregon) to stay at a hotel, and that they were not traveling very fast. On February 7, 2020, at 6:54pm UTC (10:54am PST), SA-1 told Jorge Espino the people driving the car were going to "Long Beach" (California). Jorge Espino later said they had to stop to let the dogs out. It appeared from the messages that this vehicle, like Brittney JONES' Nissan Rogue, might have a GPS tracker/audio device installed in it; investigators would later confirm this to be true.

44.     A law enforcement database showed that on February 8 and 9, 2020, the Ford Edge (bearing California plate 8NPM751) was in California. Based on this information, it appears SA-1 and Jorge Espino were likely referring to this vehicle as the one traveling to California to pick up a load of narcotics.

45.     The messages in SA-1 continued on February 10, 2020, at 6:02pm UTC (10:02am PST), when Jorge Espino said "they" were almost to Oregon. SA-1 had asked for the location of the vehicle, and Jorge Espino sent SA-1 a satellite view map (image-470816987128723) showing the icon of a silver vehicle (labeled "Edge") on Hwy 101, northwest of Mendocino National Forest and south of Eureka, California.

46.     On February 11, 2020, at 11:01am UTC (3:01am PST), Jorge Espino said "the donkey/mule" finally showed up and that it was about two hours from Astoria (Oregon). Based on my training and experience, as well as knowledge of this investigation, I believe that "the donkey/mule" is coded language referring to the vehicle and its occupants.

47.     Then, on February 12, 2020, SA-1 told Jorge Espino to tell the "cousin" that there was "work" there now in case they need it. Based on my experience I know that drug dealers often times refer to drugs as "work," and believe this to be confirmation that a load of drugs arrived in Western Washington for distribution.

48.     Between February 6 and February 14, 2020 (the ending date for the materials provided by Facebook pursuant to the first search warrant), SA–1 and BOBO communicated with each other multiple times, including multiple video chats.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 14
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### *March 17, 2019, Seizure of Methamphetamine from Shana BOBO*

49.     Between the dates of February 25 and 27, 2020, CVRDTF Det. Zimmerman met with an informant who claimed to be able to purchase methamphetamine from Brent Jones (Brittney JONES' brother).  Detective Zimmerman was previously aware Brent Jones resided at 1428 3rd Avenue N, Kelso, Washington. The informant made contact with Brent Jones at 360-751-3103 to arrange the transaction.

50.     Prior to the transaction, investigators thoroughly searched the informant and his/her vehicle for money, drugs, and other contraband; they found none.  The informant was provided with a sum of US currency (serial numbers recorded) to purchase the methamphetamine.  Detectives kept the informant under constant surveillance as s/he traveled to the location where the transaction was set to take place.  The informant met Brent Jones in a public place, and the transaction occurred under law enforcement surveillance.  Brent Jones utilized a silver 2007 Ford Edge bearing California license plate 8NPM751, registered in his name, to complete the transaction.

51.     Following the transaction, investigators followed the informant to a predetermined location.  The informant provided Det. Zimmerman with a package containing a quantity of suspected methamphetamine consistent with the amount of US currency investigators had provided.  The suspected methamphetamine field-tested positive for the presence of methamphetamine.  Investigators searched the informant and his/her vehicle following the transaction for money, drugs, or other contraband, none of which were found.

52.     Other investigators kept Brent Jones under surveillance and saw him returning to the Kelso residence listed above.

53.     On February 27, 2020, Clark County Superior Court Judge Scott Collier authorized the installation of a GPS device on the silver 2007 Ford Edge bearing California license plate 8NPM751.  The device was installed on February 28, 2020.

54.     On March 17, 2020, at approximately 6:45pm, investigators from CVRDTF and the Clackamas County Interagency Task Force (CCITF) located the Ford Edge in

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 15
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Canyonville, Oregon.  Law enforcement then followed the vehicle from Canyonville, Oregon, to the Oregon coast area.  The vehicle had been traveling northbound on Interstate 5 before taking exit 136 near Sutherlin to travel westbound on Route 138 towards Elkton, Oregon.  The vehicle continued onto Route 38 traveling westbound toward Reedsport, Oregon.  The vehicle then traveled north on Route 101 to Astoria, Oregon, where it then traveled east on Highway 30.  The vehicle traveled on Highway 30 until taking the exit for Highway 433 into Longview, Washington.  Had the vehicle remained on Interstate 5, the travel time would have been about four hours; the route taken instead took about six-and-a-half hours.  Additionally, during the surveillance, investigators observed the driver make multiple counter surveillance measures, such as exiting the main roadway to take side streets without making any prolonged stops only to re-enter the highway.  Investigators initiated a traffic stop in Longview, Washington, and identified Shana BOBO as the driver.  A male identified as Kyle Gojio was the passenger; investigators found (during a safety pat-down) that he had a methamphetamine pipe in his pocket.

55.     After being advised of her *Miranda* rights, BOBO said she had traveled to California in a BMW before the car experienced mechanical difficulties.  BOBO said she purchased the Ford Edge for $3,500 a few days earlier, in California, from a "lady."  She claimed that they (she and Gojio) wanted to "see the coast."  When investigators pointed out that the trip had been taken during the evening hours (in total darkness), BOBO acknowledged she did not see much.  Given the vehicle's travel pattern/counter surveillance maneuvers, discovery of the methamphetamine pipe in Gojio's pocket, BOBO's untruthful statements regarding her recent purchase of the Ford Edge (investigators had seen BOBO driving the vehicle in Washington more than a week earlier), Det. Anderson deployed his K9 Piper to the exterior of the vehicle.  Piper gave a positive alert for the odor of narcotics.  Investigators asked BOBO if she would consent to a search of the vehicle, and she said she would not.  She told investigators to get "a search warrant."

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 16
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

56.     BOBO and Gojio were allowed to remove two small dogs from the vehicle; Gojio was allowed to remove his cell phone, jacket, and backpack.  BOBO's two cell phones (one of which she said was a personal phone and the other of which she said was for work – she stated she worked "under the table" for a Vietnamese family in Seattle) and paperwork from her purse were secured inside the vehicle, pending application for a search warrant.  Detectives released Gojio and BOBO from the scene in the early morning hours of March 18, 2020.

57.     Clark County Superior Court Judge Collier authorized the search of the Ford Edge, and investigators executed the warrant in the afternoon of March 18, 2020. During the search, K9 Piper again provided a positive alert, near the rear bumper, where investigators could see numerous screws missing.  Once investigators removed the bumper, they found 25 pounds of methamphetamine concealed in a hidden compartment. Investigators removed their own GPS tracking device and observed another device/speaker (similar to the one in Brittney JONES' Nissan Rogue) hard-wired to the Ford Edge's power supply

### Linkage of SA-1 to the March 17, 2020, Traffic Stop and Seizure

58.     On April 15, 2020, Clark County Superior Court Judge Collier authorized a second search warrant for Facebook records from to SA-1 between the dates of February 15, 2020, and April 15, 2020.  Detectives received the records from Facebook on May 4, 2020.  A review of these records showed frequent and ongoing communication between SA-1 and other DTO members, to include Brittney JONES and BOBO.  The following paragraphs detail some of the communications received through this second search warrant

59.     BOBO utilized a Facebook profile with username "Shana Kalberer" to regularly communicate with SA-1 through Facebook messenger, to include exchanging nude videos and photos.  "Shana Kalberer" is a listed alias name on BOBO's criminal history.  Additionally, investigators were able to attribute the "Shana Kalberer" Facebook profile to BOBO through comparison of BOBO's DOL photo to photos on the profile.  It

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 17
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

should also be noted that the account ID for the account is 100011395899599, and that the display user name was changed from "Shana BeauBeaux" to "Shana Kalberer," in what I believe was an attempt to avoid detection by law enforcement.  On February 22, 2020, at 6:57pm UTC (10:57am PST), SA-1 asked BOBO to wire $800.00 to a person in Albuquerque, New Mexico.

60.    On March 9, 2020, at 5:02am UTC (10:02pm PDT on March 8, 2020), Jorge Espino told SA-1, "they are in Roseburg, about 2 hours below Eugene."  Jorge Espino and SA-1 continued to talk about the location of "them."  SA-1 then asked for a picture.  Jorge Espino then sent a satellite map view depicting the icon of a red vehicle (labeled "Edge") parked off Creekside Rd next to Interstate 5.  A second photo showed the icon of the vehicle labeled "Edge" near Roseburg, heading southbound on Interstate 5.  As noted above, investigators would later find a GPS/audio device inside the Ford Edge, which I believe allowed Jorge Espino to track its location.

61.    On March 16, 2020 at 8:05am UTC (1:05am PDT), BOBO told SA-1 they were "driving and about to pull into some ghetto hotel in 2 miles."  SA-1 replied, "ok good."  BOBO responded, "you worried?  We are good.  You can sleep now."

62.    On March 17, 2020, at 8:31am UTC (1:31am PDT), SA-1 asked Jorge Espino, "where is she?"  At 12:14pm UTC (5:14am PDT) Jorge Espino replied and said, "its just arriving in Longview."  About an hour later at 1:15pm UTC (6:15am PDT), Jorge Espino said, "it's a failure brother, she is at the same place as the other."  I believe Jorge Espino was likely referring to the fact that detectives stopped the Ford Edge and subsequently towed the vehicle to the Clark County Sheriff's Office facility (the same location where they towed Brittney JONES' vehicle in November 2019).  At 1:34pm UTC (6:34am PDT), SA-1 asked, "how?"  Five minutes later (1:39pm UTC / 6:39am PDT), SA-1 said, "but that one (a female) was not there"… "she arrived at her home" … "the donkey"… "[she] only went to drop off the money and returned home."  At 1:58pm UTC (6:58am PDT), SA-1 sent a message to Brittney JONES that read, "does it appear if they have been detained?"  (This message was sent after BOBO and Gojio had been

released from the scene of the traffic stop.)  Brittney JONES replied, "not my brother."

SA-1 then asked Brittney JONES about her brother's friend, and Brittney JONES said the

male did not appear to be in jail.  SA-1 told Brittney JONES the female called him from a

different number.  I believe this exchange shows that Brittney JONES' brother, Brent

Jones, likely had some involvement in the March 17, 2020, seizure.  I also believe it is

possible that Gojio may be friends with Brent Jones, and that the "female" calling from a

different number might have been BOBO calling SA-1 from Gojio's phone.

63.     On March 17, 2020, at 5:17pm UTC (10:17am PDT), SA-1 told Rocio

Gomez, "its gone to shit again up there."  Gomez asked, "what happened now?"  SA-1

then said, "they got the other car my love."  SA-1 went on to say, "they were almost there

where they were supposed to arrive…they didn't take them, but they took the car."  I

believe this referred to the fact that law enforcement did not arrest BOBO and Gojio, but

seized the car.  At 9:46pm UTC (2:46pm PDT), Rocio Gomez asked, "did you change

your phone number?"  SA-1 said, "yes my love, I changed it."  Based on my training and

experience, I am aware that drug traffickers frequently change their phone numbers.  This

is especially true after a substantial seizure of narcotics or US currency.

64.     SA-1 later asked Jorge Espino for an update on the vehicle.  On March 19,

2020, at 12:08am UTC (5:08pm on March 18, 2020), Jorge Espino told SA-1 the vehicle

was moved for about an hour and a half, and then it moved back to the corner.  This is

consistent with the timeline of CVRDTF investigators' execution of the search warrant

on the Ford Edge inside of a garage bay prior to returning it to its place in the

maintenance yard for storage.

65.     On March 25, 2020, at 7:54pm UTC (12:54pm PDT), about a week after

the traffic stop and seizure of methamphetamine described above, BOBO sent SA-1 three

photographs of law enforcement standing near the Ford Edge after the vehicle was seized

and after BOBO and Gojio were released from the scene.

66.     On April 5, 2020, at 5:43am UTC (10:41pm on April 4, 2020), SA-1 asked

Brittney JONES for the telephone number of someone named "Jose Luis."  Brittney

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 19
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

JONES later sent a screen shot showing the name "Joseluis Dominguez," and another screen shot showing a conversation with "Joseluis" and telephone number 360-721-4156. In the same screen shot, it appeared Brittney JONES gave Joseluis the telephone number 661-903-2417 as Cosme SANCHEZ-ESPINO's phone number, and asked Joseluis to call SANCHEZ-ESPINO. In a subsequent message, SA-1 told Brittney JONES he was finally able to reach him and was talking to him. According to routine record checks, telephone number 360-721-4156 is associated with a Jose Ramirez at 8917 NE 15th Ave, H82, Vancouver, Washington. Washington DOL records show a Jose Luis Ramirez Cruz reporting a prior address of 8917 NE 15th Ave, and current address of 2517 NE 127th Ave, Vancouver, Washington. Based on this information, I believe "Joseluis Dominguez" is likely Jose Luis Ramirez Cruz.

67. On April 5, 2020, at 6:41am UTC (11:41pm on April 4, 2020), SA- 1 told Brittney JONES he spoke with the "fat one" (believed to be Joseluis/Jose Luis Ramirez Cruz). SA-1 stated that he (Joseluis) said he has a friend who will go transport drugs, and that the friend has a ranch on the "other side" where they can keep the stuff (drugs). Brittney JONES replied and said she knows him (Joseluis).

### Interactions between SA-1 and SA-2

68. In the materials provided by Facebook through the first search warrant, CVRDTF detectives saw that, on November 1, 2019, SA-1 started a conversation with the user of a Facebook profile page displaying the username "AV DIAZ," with unique Facebook ID 100027651644395 (SA-2). The Facebook profile for SA-2 shows the user is from Vancouver, Washington, with a listed hometown of La Union, Guerrero, Mexico. SA-2 is "tagged" in two photos by Facebook user "Berta Valdovinos." Based on my knowledge of the previous investigation that resulted in VALDOVINOS-DIAZ's current incarceration, I am aware that VALDOVINOS-DIAZ is from La Union, Guerrero, Mexico, and is married to Floriberta Valdovinos-Valle. I believe "Berta Valdovinos" is Floriberta Valdovinos-Valle, and believe that VALDOVINOS-DIAZ is the user of SA-2.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 20
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

69.    On November 15, 2019, beginning at 5:59am UTC (9:59pm on November 14, 2019), SA-1 told SA-2 to tell "them" to make them "square like," so they fit, and SA-2 said, "ok" at 6:00am UTC (10:00pm on November 14, 2019).  On November 16, 2019, at 7:19am UTC (11:09pm PST on November 15, 2019) SA-1 asked, "have you given them the girl's number so they come to an agreement so they meet up at one place at the same time?"  SA-2, at 7:09am UTC (11:09pm PST) on November 15, 2019, provided an affirmative answer.  One minute later, SA-2 then said he will send SA-1 a number, and to have the girl call it when she is two hours away.  SA-1 replied at 7:11am UTC (11:10 pm PST) and said to give them her number and that they should call her now while she is driving.

70.    On November 18, 2019, at 7:23am UTC (11:23pm on November 17, 2020), SA-1 told SA-2, "they stopped her."  SA-1 said she was about 2 minutes from the house, and wrote, "she says they are using a dog."  SA-1 also said she had her kids and her brother with her.  SA-1 told SA-2 that everything was "fixed well."  SA-2 then told SA-1 not to worry about it, and that everything would be fine.  Based on the facts of this investigation, I believe SANCHEZ-ESPINO and VALDOVINOS-DIAZ were talking about the November 17, 2019, stop of Brittney JONES and her brother, Brent JONES.  I further believe that the November 15, 2019, messages described above were the coordination for the 57 pounds of methamphetamine that Brittney JONES transported inside her Nissan Rogue.

71.    On January 6, 2020, at 2:17am UTC (6:17pm PST on January 5, 2020), SA-1 sent a message to SA-2 that read, "they arrived all is good."  This is consistent with the information in a law enforcement database putting the Ford Edge (with California license 8NPM751) in California on January 4, 2020.  I believe this was referring to the successful transport of drugs from California to Western Washington.

72.    In a conversation thread beginning on February 6, 2020, at 3:58am UTC (7:58pm PST on February 5, 2020), SA-2 sent SA-1 the address of "508 W 33rd St Vancouver Wa 98660."  SA-1 told SA-2 what tools would be needed, specifically a

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 21
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

socket wrench size 5.5 (7.16 metric) and a small Philips screwdriver, to open a vehicle trap.  Later during this conversation SA-2 asked if the "white girl" was going there for the money.

73.     On February 7, 2020, at 7:11am UTC (11:11pm PST on February 6, 2020), SA-2 sent telephone number 626-510-5960 to SA-1 and told SA-1 to have "them" call that number and make arrangements to meet.  The user of the listed phone number appears to be the person meeting whomever SA-1 was sending.  SA-2 told SA-1 at 7:17am UTC (11:17pm PST on February 6, 2020) it was in Long Beach.  I believe VALDOVINOS-DIAZ was facilitating a drug delivery in Long Beach, California, between the user of 626-510-5960 and SANCHEZ-ESPINO's couriers.  As described above, a law enforcement database showed that on February 8 and 9, 2020, the Ford Edge (bearing California plate 8NPM751) was in California, and other messages recovered from SA-1 indicated that SA-1 and Jorge Espino were discussing individuals driving to California to pick up a load of narcotics in this same timeframe.

74.     On April 28, 2020, Clark County Superior Court Judge Collier authorized a search warrant for Facebook records related to SA-2 dated between November 1, 2019, and April 28, 2020.  Detectives served the warrant on April 29, 2020, and received the requested records on May 8, 2020.

75.     An initial review of the records has revealed VALDOVINOS-DIAZ identifying himself in messages as the user of SA-2, including by sending photographs of himself.  Investigators have also observed conversations between VALDOVINOS-DIAZ (using SA-2) and accounts believed to belong to VALDOVINOS-DIAZ's children wherein VALDOVINOS-DIAZ is referred to as "dad."  The records also showed SA-2 has been active since July 29, 2018

76.     Based on my training and experience, I am aware that Facebook accounts are capable of being linked to cellular phone numbers.  SA-2 is linked to cellular phone number 971-218-1913.  This number has been attributed to VALDOVINOS-DIAZ in the course of this investigation, including a March 2019 consensually recorded phone call

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 22
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

placed to the number by an individual cooperating with law enforcement. At the time of the phone call, the individual was cooperating with the government in hopes of receiving consideration on state charges. The context of this call was to schedule a delivery of ten pounds of methamphetamine at a price of $2,500 per pound. This delivery never occurred, due to safety concerns. Moreover, the individual's cooperation with law enforcement ended after s/he was found to be engaging in unauthorized drug transactions.

77.     On September 17, 2020, I presented the above facts in an affidavit in support of a search warrant for SA-1 and SA-2. The Honorable Theresa L. Fricke, United States Magistrate Judge, found probable cause to issue the warrants. The warrants were subsequently served upon Facebook, and records were received on October 19, 2020. These documents are currently being reviewed.

### *Pen Register/Trap & Trace Order on TCP-6 & TCP-9*

78.     On September 9, 2020, AT&T records indicated **TCP-6** was subscribed to a "Prepaid Customer," and that the account has been active since November 2018. This subscriber information has remained the same since it was discovered and attributed in the same timeframe (i.e., November 2018).

79.     On September 9, 2020, United States Magistrate Judge Fricke issued an Order authorizing the installation and use of a pen register/trap-and-trace ("PRTT") on **TCP-6** for a 60-day period. Initial review of the data received from the PRTT has revealed that VALDOVINOS-DIAZ, the suspected user of **TCP-6**, has made both wire and electronic communications to known co-conspirators, to include Brittney JONES.

80.     On September 16, 2020, AT&T records indicated **TCP-9** was subscribed to a "Prepaid Customer," and that the account has been active since March 17, 2020. SANCHEZ-ESPINO, the user of SA-1, stated in a Facebook message to Rocio Gomez on March 17, 2020, that he had changed his number following the seizure of methamphetamine from BOBO and Gojio.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 23
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

81.     Based on analysis of toll records from Brittney JONES' phone (360-762-9353), Jose Luis Ramirez Cruz's phone (360-721-4156), and **TCP-9**, I believe that SANCHEZ-ESPINO is using **TCP-9**, and that it is his most up-to-date telephone number.

82.     On September 17, 2020, United States Magistrate Judge Fricke issued an Order authorizing the installation and use of a PRTT on **TCP-9** for a 60-day period. Initial review of the data received from the PRTT has revealed that SANCHEZ-ESPINO, the suspected user of **TCP-9**, has made both wire and electronic communications to known co-conspirators, to include Brittney JONES.

83.     Given the above facts, I believe there is probable cause to believe that VALDOVINOS-DIAZ is using **TCP-6** and SANCHEZ-ESPINO is using **TCP-9** for drug-related purposes, and will continue to use their respective devices for the same purposes.  Based on my training and experience, I am aware that drug trafficking is not a singular offense, and will be conducted repeatedly to gather illicit proceeds.

84.     I am seeking authorization to receive real-time location data for **TCP-6** and **TCP-9** in order to assist law enforcement in establishing that these devices remain in the possession of VALDOVINOS-DIAZ and SANCHEZ-ESPINO, respectively.  As noted, both men are currently incarcerated in Oklahoma.  I anticipate the location data for **TCP-6** and **TCP-9** will show that both devices are inside the prison facility, and may show a particular cellblock or other location with which other information will corroborate VALDOVINOS-DIAZ and SANCHEZ-ESPINO's possession and use of the devices. Real-time location tracking of **TCP-6** and **TCP-9** may also show, in combination with information received through the PRTTs, when and where inside the prison facility VALDOVINOS-DIAZ and SANCHEZ-ESPINO use the devices (e.g., in their cells, in the common area of the cellblock, or in the prison yard).  This could lead investigators to identify other inmates who are aware of VALDOVINOS-DIAZ and SANCHEZ-ESPINO's use of contraband cell phones and/or who know of or are involved in their drug trafficking activities.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 24
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

85.     Based on my training and experience, including experience obtained through participation in this and other investigations involving the distribution of controlled substances, including those targeting long-term conspiracies responsible for the distribution of controlled substances, and based upon my consultation with other experienced law enforcement agents and officers, I know:

    a.  Drug trafficking conspiracies, especially those involving large amounts of narcotics and interstate shipments, usually take place over several months or years, and continue to operate even when enforcement activity results in arrests and/or seizures of drugs and/or money.

    b.  Those involved in the distribution of illicit drugs often travel by vehicle, both domestically and to and/or within foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, or to transport drugs or drug proceeds

    c.  Illicit drugs are frequently transported into the United States and between cities within the United States in bulk, high-purity form, and drug traffickers attempt to mask the distinct odors of particular drugs during such transport through the use of heat sealing and/or canning devices and/or aromatic substances such as laundry soap, dryer sheets, air fresheners, or axle grease.   Likewise, money is similarly transported in bulk.   It is common for drug traffickers to maintain hidden compartments within vehicles, items altered for the purpose of hiding or concealing drugs, and items purchased and converted for the use of storing their drugs.

    d.  Furthermore, I know that it is common for drug traffickers to secret drugs, currency and other valuable items representing the proceeds of drug sales within their residences and/or vehicles in order to prevent the theft of such items by other persons or the seizure of such items by law enforcement. These secure locations typically include other residences also known as

"stash houses," storage lockers, safes, portable safes, vaults, or other locked containers (sometimes requiring passwords or codes to open), as well as specially constructed concealed compartments such as those often found in "load cars"  used specifically to facilitate drug trafficking.

e.  I know from my training and experiences, and conversations with other agents, that those involved in long-term conspiracies to distribute illegal drugs often maintain the types of items described above in their residences and/or in their vehicles and travel to such secure locations in their vehicles on an ongoing, long-term basis so as to facilitate the conspiracy and prevent detection.

**INFORMATION ON CELLULAR DEVICES**

86.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.

87.    Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 26
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

88.    Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

89.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

90.    In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 27
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

91.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on AT&T's network or with such other reference points as may be reasonably available.

92.     When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application initiated data transfers, among other things.

93.     Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phones.  Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

94.     Different service providers use different systems, applications, and reports to collect or analyze cell site data.  These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon),

Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE, Timing Advance, and TruCall.  RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

95.    Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phones' user or users and may assist in the identification of co-conspirators.

96.    Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone.  These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone.  To provide for any such changes made to the Target Cell Phones, Attachments A1 and A2 specify that the property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone

number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by the warrant.

**AUTHORIZATION REQUEST**

97.    Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and  18 U.S.C. § 3123.

98.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for 90 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscribers or users of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give those persons an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

99.    I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 30
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

control of AT&T.  I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phones on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The agency shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

100.    Pursuant to 18 U.S.C. § 2703(g), the government will execute the warrant by serving them on AT&T.  Because the warrant will be served on AT&T, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.  I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

101.    This is the first request in this judicial district for a warrant with respect to **TCP-6** and **TCP-9** as a part of this investigation.  With respect to **TCP-6**, this is the fifth request for a PRTT order, and with respect to **TCP-9**, this is the second request for a PRTT order, in this judicial district, as a part of this investigation.

//

//

//

//

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 31
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

102.   As noted above, I am assigned to the FBI's Vancouver, Washington, office. Thus I am submitting this affidavit and application electronically in accordance with Local Criminal Rule 41(d)(3).

SEAN THORNTON, Affiant
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 30th day of October, 2020.

J. RICHARD CREATURA
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 32
USAO # 2018R01199

**EXHIBIT 1**

DECLARATION

I, Marci L. Ellsworth, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the Federal Bureau of Investigation is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

4.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 30th day of October, 2020.

*s/ Marci L. Ellsworth*
MARCI L. ELLSWORTH
Assistant United States Attorney

EXHIBIT 1 -- PAGE 1
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A1**

**Property to Be Searched and Subscriber/Subject Information**

1.    Records and information associated with the cellular phone assigned call number 971-218-1913, with listed subscriber(s) Prepaid Customer ("Target Cell Phone 6"), that are in the custody or control of AT&T, a company headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.  The subscriber of Target Cell Phone 6 is unknown.  The identity of the person who is the subject of the criminal investigation and believed to be using Target Cell Phone 6 is Alfredo VALDOVINOS-DIAZ.

2.    Target Cell Phone 6.

3.    The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone number listed above, within the period of disclosure authorized by this warrant.

ATTACHMENT A -- PAGE 1
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A2**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phone assigned call number 661-903-2417, with listed subscriber(s) Prepaid Customer ("Target Cell Phone 9"), that are in the custody or control of AT&T, a company headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.  The subscriber of Target Cell Phone 9 is unknown.  The identity of the person who is the subject of the criminal investigation and believed to be using Target Cell Phone 9 is Cosme SANCHEZ-ESPINO.

2.      Target Cell Phone 9.

3.      The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone number listed above, within the period of disclosure authorized by this warrant.

ATTACHMENT A -- PAGE 2
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding the Target Cell Phones.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

I.      <u>Section I</u>:  **Information to be Disclosed by AT&T**

1.      **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Accounts listed in Attachments A1 and A2:

a.      Names (including subscriber names, user names, and screen names);

b.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.      Local and long distance telephone connection records from September 1, 2020, to the date this warrant is served.

d.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions from September 1, 2020, to the date this warrant is served.

e.      Length of service (including start date) and types of service utilized;

f.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"),

ATTACHMENT B -- PAGE 1
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   g. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   h. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  2. **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days.**

   a. AT&T shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

  (i) IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

  (ii) Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone numbers described in Attachments A1 and A2, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

  (iii) IP addresses of any websites or other servers to which the cell phone device or devices connected; and

  (iv) Source and destination telephone numbers and email addresses.

   b. On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, AT&T shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

ATTACHMENT B -- PAGE 2
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

3.  **Historical Cell Cite Location Information.**

a.  All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Accounts listed in Attachments A1 and A2 from September 1, 2020, to the present, including:

i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.  historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by AT&T.  Accordingly, this information includes the following data sets to the extent that they are collected by AT&T: RTT, PLU, PCMD, NELOS, EVDO, TruCall, ALULTE, and Timing Advance.

b.  The physical address and coverage maps of cell towers used by the Target Cell Phones.

4.  **Prospective Cell Site Location Information.**

a.  All information about the location of the Target Cell Phones described in Attachments A1 and A2 **a period of 45 days**, during all times of day and night.  This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachments A1 and A2.

b.  The physical address and coverage maps of cell towers used by the Target Cell Phones.

5.  **Prospective E-911/GPS and Cell Site Information.**

a.  All information about the location of the Target Cell Phones described in Attachments A1 and A2 for **a period of 45 days**, during all times of day and

night.  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachments A1 and A2.

           b.     The physical address and coverage maps of cell towers used by the Target Cell Phones.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services.  The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**    <u>**Section II:  Information to Be Seized by the Government**</u>

1.    All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Alfredo VALDOVINOS-DIAZ, Cosme SANCHEZ-ESPINO, and others.

2.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.    Location Information regarding the Target Cell Phones.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency

ATTACHMENT B -- PAGE 4
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by AT&T in order to locate the things particularly described in this warrant.

ATTACHMENT B -- PAGE 5
USAO # 2018R01199

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800